UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

BONNER FARMS, LTD., et al.,     )
                                ) 5:04CV2188
        Plaintiffs              )
                                ) JUDGE LESLEY WELLS
        v.                      ) (Mag. Judge Kenneth McHargh)
                                )
POWER GAS MARKETING &           )
    TRANSMISSION, INC.          )
    et al.,                     )
                                )
        Defendants              )
                                ) REPORT AND RECOMMENDATION

McHARGH, MAG. J.

Plaintiffs Bonner Farms, Ltd., Charles Burrows, Equity Oil & Gas Funds, Inc., and Quality Oil & Gas, Inc., originally filed suit in the Portage County, Ohio, Court of Common Pleas. The suit was removed to this court on the basis of diversity of citizenship on Nov. 2, 2004. (Doc. 1.) In their answer, defendant Power Gas Marketing & Transmission, Inc., alleged counter-claims against all plaintiffs. (Doc. 9.) A second amended complaint was filed on Feb. 10, 2006 (doc. 46), and an amended counterclaim was filed that same day (doc. 47).

This matter has been referred to the undersigned Magistrate Judge for a report and recommendation on plaintiffs' motion for partial summary judgment on several counterclaims (doc. 57), as well as plaintiffs' motion for partial summary judgment on several claims (doc. 71). (Doc. 82.)

Plaintiff/Counter-defendant Bonner Farms, Ltd. ("Bonner") is a limited liability company that is organized under the laws of Ohio and maintains its principal place of business there.

Bonner owns approximately 450 acres of land in Portage County.  Oil wells on this property tie into the Portage System.

Plaintiff/Counter-defendant Charles Burrows ("Burrows") is the trustee of a family trust, organized under the laws of Ohio, that owns approximately 223 acres of land in Portage County.  Oil wells on this property tie into the Portage System.

Plaintiffs/Counter-defendants Equity Oil & Gas Funds, Inc. ("Equity") and Quality Oil & Gas, Inc. ("Quality") are corporations incorporated under the laws of Ohio that maintain their principal places of business in Ohio.  They own interests in numerous oil and gas wells and natural gas pipeline gathering systems, including the Portage System and the Quality System.  Timothy Lanzer is the president of Quality.

Defendant/Counter-claimant Power Gas Marketing & Transmission, Inc. ("Power Gas") is a Delaware Corporation based in Pittsburgh, Pennsylvania.  Power Gas has conducted business in Portage and Columbiana Counties, from which this suit arose.  Power Gas asserts the right to operate the Portage and Quality Systems, but the validity of the operating agreements is in dispute.  Power Gas owns and operates oil wells on the Bonner and Burrows properties, pursuant to leases made between predecessors of Bonner, Burrows, and Power Gas as long ago as 1928.  Burrows and Bonner contest the continuing validity of the leases, while Power Gas alleges that Burrows and Bonner have breached these contracts.  These wells, along with other wells owned by Power Gas and wells owned by Equity are connected to the Portage System.  Power Gas's president and CEO is Blair Merkel.

Plaintiffs/Counter-defendants brought this action against Power Gas in September 2004.  The current operative document is the Second Amended Complaint (doc. 46, "Amended

Compl."), filed by the Plaintiffs/Counter-defendants on February 10, 2006, which alleges trespass, breach of contract, conversion, interference with contract, negligence, and other tortious activity on the part of Power Gas. Power Gas responded by bringing counterclaims of breach of contract, conversion, fraud, civil conspiracy, promissory estoppel, and unjust enrichment against the Plaintiffs/Counter-defendants. (Amended Counterclaim and Third-Party Complaint of Defendant Power Gas Marketing & Transmission, Inc., doc. 47, hereinafter "Amended Counterclaim.")

The Plaintiffs/Counter-defendants in this case have filed a motion for partial summary judgment (doc. 57), seeking to dismiss Power Gas's conversion, fraud, conspiracy, promissory estoppel, and unjust enrichment counterclaims. Their argument is essentially the same for all counts, namely that these counterclaims duplicate Power Gas's breach of contract claims.

In a separate motion, Plaintiff/Counter-defendant Quality has requested summary judgment (doc. 71) in their favor as to Counts VII and XII of the Amended Complaint. They argue that the working relationship between Quality and Power Gas is governed by written contracts that, when properly interpreted, indicate Quality is entitled to judgment as a matter of law.

I. STANDARD FOR SUMMARY JUDGMENT

Summary Judgment should be granted where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The burden of showing that there is no genuine issue of material fact lies with the moving party. This does not mean however, that the moving party must present affirmative evidence that there is no issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

3

317, 325 (1986).  Instead, the moving party may meet the burden by "'showing' - that is, pointing out to the . . . court - that there is an absence of evidence to support the non-moving party's case." Id.  In response, Rule 56(e) requires the non-moving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  When ruling on a motion for summary judgment, the court must construe the evidence and any inferences to be drawn from it in the light most favorable to the non-moving party. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990).  If the non-moving party responds to the motion for summary judgment with evidence demonstrating a genuine issue of material fact such that a reasonable jury could find in her favor, the motion must be denied.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

     Plaintiff/Counter-defendant Quality has moved for summary judgment in its favor on two of its own claims.  Because Quality would have the burden of proof on these claims at trial, it has the burden of affirmatively showing the absence of a genuine issue of material fact in order to prevail on its motion for summary judgment.  Quality must present evidence that would entitle it to a directed verdict if that evidence were not controverted at trial.  If the defendant responds to Quality's motion with evidence demonstrating a genuine issue of material fact, the motion must be denied.  However, if after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendant, then summary judgment will be entered on behalf of Quality.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (movant must establish all essential elements of claim or defense); McGrath v. City of Philadelphia, 864 F.

Supp. 466, 473 (E.D. Pa. 1994) (citing National State Bank v. Federal Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992)).

## II. DISCUSSION

### A. Summary Judgment Should Be Denied in Part and Granted in Part with Respect to Power Gas's Tort Claims.

Regarding Power Gas's tort claims, the Plaintiffs/Counter-defendants have correctly pointed out that "[i]t is well established in Ohio that it is no tort to breach a contract." Hoskins v. Aetna Life Ins. Co., 6 Ohio St. 3d 272, 276, 452 N.E.2d 1315, 1320 (1983). It is also true that a party may not recover for a tort and a breach of contract based on the same conduct. "Generally, 'the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim.'" Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996), quoting Wolfe v. Continental Gas Co., 647 F.2d 705, 710 (6th Cir. 1981). However, a tort claim can arise from a contractual relationship "if the breaching party also breaches a duty owed separately from that created by the contract, that is a duty owed even if no contract existed," id. quoting Battista v. Lebanon Trotting Assn., 538 F.2d 111, 117 (6th Cir. 1975), and there are actual damages "in addition to those damages attributable solely to the breach of the contract," Ali v. Jefferson Ins. Co., 5 Ohio App. 3d 105, 108, 449 N.E.2d 495, 499 (Ohio Ct. App. 1982). In other words, one party to a contract may bring a tort action against another if the tort claim alleges a breach of duty resulting in damages occurring apart from a breach of contract.

5

### 1.  Summary Judgment should be denied with respect to Count V of the Amended Counterclaim - Conversion.

Power Gas should be allowed to proceed with its counterclaim of Conversion (Count V of the Amended Counterclaim).  Conversion is defined as "any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights."  Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co., 24 Ohio App. 3d 91, 93, 493 N.E.2d 289, 292 (Ohio Ct. App. 1985).  Power Gas has demonstrated that there is an issue of fact regarding whether the Plaintiffs/Counter-defendants have wrongfully taken their gas.  (Doc. 72, exh. H, Affidavit of John Firko ("Firko Aff."), at ¶¶ 4-7.)  The Plaintiffs/Counter-defendants argue that "Power Gas's conversion claims are predicated in precisely the same alleged conduct as that which Power Gas claims constitutes a breach of contract." (Plaintiffs/Counter-defendants' Motion for Partial Summary Judgment, doc. 57, hereinafter "Plaintiffs' Motion," p. 8.)  A question of material fact exists as to whether the alleged wrongful acts of the Plaintiffs/Counter-defendants are a breach of contract or something more.

Plaintiffs/Counter-defendants state that "the interests of the parties in the oil and gas are determined by contract," id., meaning the relevant leases and operating agreements.  The leases do allow landowners some free gas.  For example, the Bonner Lease provides that the lessor may tap "any gas well on said land and take gas produced from said well for use for light and heat in two buildings on said land."  (Doc. 57, exh. A, Bonner Lease, at ¶ 5.)  Such an agreement could be breached, for example, if the lessor took gas from the well for three buildings, or used the gas for purposes other than light and heat.

In contrast, Power Gas contends that Plaintiffs/Counter-defendants' actions have breached a duty outside of the contractual relationship.  They present evidence that Bonner has

tapped into the Portage System pipeline rather than a well.  (Firko Aff.,at ¶ 5; doc. 72, exh. I, Deposition of Richard Bonner ("Bonner Depo."), at 138:4-139:4; 141:16-18.)  The pipelines contain gas from many wells, not just those located on the Bonner property.  (Amended Counterclaim, at ¶¶ 10-11.)  Therefore, tapping the pipeline allows Bonner to take gas from sources not named in the lease.  The Bonner Lease makes no mention of tapping the pipeline, so taking gas from this source could be found to be beyond the scope of the contract.  Summary judgment cannot be granted because Power Gas has demonstrated a genuine issue of material fact relating to damages in addition to their breach of contract claim.  Therefore, they should be allowed to proceed with their conversion claim.

### 2.  Summary Judgment Should Be Denied in Part and Granted in Part with Respect to Counts VI-IX of the Amended Counterclaim - Fraud.

Power Gas should be allowed to proceed with all but one of its fraud counterclaims (Counts VI through IX of the Amended Counterclaim).  The elements of a prima facie case of fraud are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact,
> (b) which is material to the transaction at hand,
> (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
> (d) with the intent of misleading another into relying upon it,
> (e) justifiable reliance upon the representation or concealment, and
> (f) a resulting injury proximately caused by the reliance.

Friedland v. Lipman, 68 Ohio App. 2d 255, 429 N.E.2d 456 (Ohio St. App. 1980) (syllabus).

Power Gas contends that the Plaintiffs/Counter-defendants have misrepresented or omitted material information including the amount of gas produced by certain wells, whether gas is being misappropriated, and the amount of gas loss that should be allocated to the Plaintiffs/

7

Counter-defendants.  (Amended Counterclaim, at ¶¶ 42, 49, 56, 63.)  The Plaintiffs/Counter-defendants state that Power Gas "maintains that the same conduct it describes as fraud also constituted a breach of [contract]," (Plaintiff's Motion, at 6) and note that "Ohio courts routinely reject fraud claims based on alleged breach of contractual duties" (id.)  However, such claims are not precluded.  See, e.g., Universal Contracting Corp. v. Aug, No. A-0103486, 2004 WL 3015325, at *5 (Ohio Ct. App. Dec. 30, 2004), reconsideration denied by 106 Ohio St. 3d 1417, 830 N.E.2d 348 (2005) ("No Ohio court has denied the right of parties in privity to bring negligent misrepresentation claims.")  It has been established that "the fact that a plaintiff has separate and independent causes of action in contract and in tort does not permit him to recover more than the amount of damage actually suffered as a consequence of the injury resulting from the wrongful breach of contract."  Kovacic v. All States Freight Sys., No. 69926, 1996 WL 465349, at *7 (Ohio Ct. App. Aug. 15, 1996), quoting Davidson Fuel & Dock Co. v. Pickands Mather & Co., 54 Ohio App. 2d 177, 182, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977).  Disallowing double recovery, however, does not mean that a party cannot bring both a fraud claim and a breach of contract claim when an additional duty has been breached causing additional damages.  Exact Software North Amer., Inc. v. Infocon Sys., Inc., No. 3:03CV7183, 2004 U.S. Dist. LEXIS 7580, at *18 (N.D. Ohio Apr. 16, 2004).

### a.  Summary Judgment Should Be Denied with Respect to Count VI of the Amended Counterclaim - Fraud Against Bonner.

Power Gas alleges that Bonner has engaged in wrongful acts not governed by the disputed contracts between the parties.  (Defendant Power Gas Marketing & Transmission, Inc.'s Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment, doc. 72, hereinafter

"Defendant's Brief in Opposition," p. 11.)  For example, Power Gas supports Count VI with evidence that Bonner tapped into the Portage System to run his grain dryer and then reconnected the line without informing Power Gas after they disconnected it.  (Bonner Depo., at 141:2-18.)  Such behavior could be found to be a knowing concealment of material information that Bonner had a duty to disclose.  Because Power Gas has demonstrated that there is a material issue of fact relating to its fraud claim against Bonner, summary judgment is inappropriate.

<u>b.  Summary Judgment Should Be Denied with Respect to Count VII of the Amended Counterclaim - Fraud Against Burrows.</u>

Power Gas has demonstrated a material issue of fact relating to its claim of fraud against Burrows.  Power Gas has submitted an affidavit from one of its experts, stating that Burrows is using a line from the Power Gas-operated Jones Well No. 6 to provide gas to a number of dwellings and other buildings, in excess of the free gas provided for in the Burrows lease.  (Firko Aff., at ¶ 7.)  Again, if this behavior was not contemplated by the contract between the parties, it could be found to be outside the scope of the Burrows lease.  If so, Burrows could be liable to Power Gas for tort damages as well as damages for breach of contract.  Therefore, summary judgment should not be granted.

<u>c.  Summary Judgment Should Be Denied with Respect to Count VIII of the Amended Counterclaim - Fraud Against Equity.</u>

Power Gas alleges that Equity has also made material misrepresentations or omissions.  Based on Bonner's testimony, Power Gas contends that Equity has accepted payments from Bonner for gas taken out of the Portage System.  (Defendant's Brief in Opposition, p. 13.)

Equity admits that any such payments should have gone to Power Gas. (Id.) Power Gas has also presented evidence that Equity connected its pipeline to the Portage System in a manner that allowed them to control the pressure in the line so that gas would flow from the Portage System to the Quality System. (Firko Aff., at ¶ 6.) This activity was not reported to Power Gas, but was discovered by field personnel. (Id.) Therefore, Power Gas has asserted a material concealment of fact. These activities are not governed by a contract, so Power Gas should be permitted to pursue tort damages. Because the Power Gas has successfully countered Plaintiffs/Counter-defendants' assertion that there is an absence of issues of material fact, summary judgment should not be granted.

### d.  Summary Judgment Should Be Granted with Respect to Count IX of the Amended Counterclaim - Fraud Against Quality.

This count was not addressed in Power Gas's response to the Plaintiffs' Motion. Because they have not claimed any facts that would show Quality perpetrated fraud, Summary Judgment should be granted on Count IX.

### 3.  Summary Judgment Should Be Granted with Respect to Count X of the Amended Counterclaim - Civil Conspiracy.

Power Gas has not alleged sufficient facts to sustain its claim of civil conspiracy. A civil conspiracy is defined in Ohio as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co., 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866 (1995). To have a conspiracy claim, a party must have an underlying tort claim and must

show damages attributable to the conspiracy in addition to those resulting from the underlying tort.  Avery v. Rossford, Ohio Transp. Improvement Dist., 145 Ohio App. 3d 155, 165, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001).

The Plaintiffs/Counter-defendants first argue in their Motion that Power Gas cannot sustain a claim for civil conspiracy because they have not shown evidence of an underlying tort.  (Plaintiffs' Motion, p. 9.)  In fact, as described above, Power Gas's claims for conversion and fraud are viable, so the Plaintiffs' Motion cannot be granted on those grounds.

The Plaintiffs/Counter-defendants also claim that Power Gas has not demonstrated any damages arising from the alleged conspiracy.  (Id.)  This issue was not addressed by Power Gas in its response to the Plaintiffs' Motion, nor were specific facts laid out in the initial Counterclaim.  Without evidence of some damages attributable to the alleged conspiracy in addition to damages incurred from the underlying tort, Power Gas cannot sustain a claim of civil conspiracy.  Because the Plaintiffs/Counter-defendants have shown an absence of any issue of material fact relating to damages, Plaintiffs' Motion should be granted with respect to Count X of the Counterclaim.


B.  Summary Judgment Should Not Be Granted with Respect to Count XI of the Amended Counterclaim - Promissory Estoppel and Count XII of the Amended Counterclaim - Unjust Enrichment.

To establish a prima facie case of promissory estoppel under Ohio law, a party must show (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) injury to the party asserting estoppel resulting from its reliance.  Brantley Venture Partners II, L.P. v. Dauphin Deposit Bank and

11

Trust Co., 7 F. Supp. 2d 936, 946-47 (N.D. Ohio 1998) (applying Ohio law).  Promissory estoppel is a question for a jury because "[t]he existence or nonexistence of promissory estoppel essentially turns on the credibility of the witnesses.  The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact."  Patrick v. Painesville Commercial Prop., Inc., 123 Ohio App. 3d 575, 586, 704 N.E.2d 1249, 1255 (Ohio Ct. App. 1997) (internal citations omitted).

Under Ohio law, "Unjust enrichment occurs when one party bestows a benefit on another party or individual, without receiving just compensation for the reasonable value of the services rendered."  Seneca Valley, Inc. v. Village of Caldwell, 156 Ohio App. 3d 628, 643, 808 N.E.2d 422, 433 (Ohio Ct. App. 2004) (internal quotation omitted).

The Plaintiffs/Counter-defendants argue that the relationship between the parties is based in contract and that therefore, Power Gas's promissory estoppel and unjust enrichment claims should be dismissed.  It is true that both kinds of claims are precluded where there is a valid, enforceable contract between parties.  Warren v. Trotwood-Madison Cty. School Bd. of Educ., No. 17457, 1999 WL 148233, at *8(Ohio App. Ct. March 19, 1999) ("[P]romissory estoppel is inconsistent with the existence of an express written contract."); City of Elyria v. York Int'l Corp., 2005 U.S. Dist. LEXIS 10889, at *10 (N.D. Ohio Jun. 7, 2005) ("As a rule, an unjust enrichment claim is not recognized if plaintiffs also seek recovery under a valid contract.")  However, Ohio law permits that where there is a dispute as to the existence or enforceability of a contract, a party may plead promissory estoppel or unjust enrichment in the alternative.  Awada v. Univ. of Cincinnati, 83 Ohio Misc. 2d 100, 104, 680 N.E.2d 258, 261 (Ohio Ct. Cl. 1997) ("This court allows promissory estoppel claims to be argued alternatively to breach of contract

12

claims."); Teknol, Inc. v. Buechel, No. C398416, 1999 U.S. Dist. LEXIS 22017, at *8 (S.D. Ohio Aug. 9, 1999) (A plaintiff is not "precluded from pleading unjust enrichment in the alternative, particularly where there is some dispute over the existence or enforceablilty of the agreement.")  Therefore, while a party may not recover damages for both breach of contract and promissory estoppel or unjust enrichment, it may pursue both types of claims under certain circumstances.

In their Motion, the Plaintiffs/Counter-defendants contend that "It is undisputed that Power Gas and Plaintiffs had written contractual agreements which governed their rights and obligations." (Plaintiffs' Motion, p. 11.)  This is not what they alleged in their complaint.  In the complaint they said, "The Bonner Lease and the Burrows Leases have expired and are no longer valid."  (Amended Compl., at ¶ 13.)  They also stated that Power Gas has operated the Quality System allegedly pursuant to the Bingham Operating Agreement, which was entered into by Power Gas's predecessor Bingham Silver Lead Company, but that "[t]he Bingham Operating Agreement has expired by its own terms and is non-assignable without the consent of the other parties."  (Id., at ¶¶ 34-35.)  They claimed explicitly that the Bingham Operating Agreement "is not a valid and legally binding agreement."  (Id., at ¶ 42.)  They also said that "Power has been operating the Portage Systems *allegedly* pursuant to an agreement . . . between Equity's predecessor NuCorp Energy Co. and Power's predecessor, Energy Development Corp."  (Id., at ¶ 18, emphasis added.)  The Plaintiffs/Counter-defendants have themselves called into question the validity and enforceability of the contracts between the parties.

The Plaintiffs/Counter-defendants next argue that Power Gas has not demonstrated any evidence to support their promissory estoppel and unjust enrichment claims.  (Plaintiffs' Reply

13

in Support of Motion for Partial Summary Judgment, doc. 79, p. 3.)  However, the evidence for these claims can be found within the evidence for Power Gas's breach of contract claims.

In Schleicher, the plaintiff entered into an employment agreement with the defendant. Schleicher v. Alliance Corp. Res., Inc., No. 95APE03312, 1995 Ohio App. LEXIS 5405, at *2 (Ohio Ct. App. Dec. 7, 1995).  The durational terms of the agreement were open to several possible interpretations.  Id. at *8.  The court noted that this ambiguity could mean that there was no meeting of the minds as to a material term, and therefore no contract, but that in that case, the plaintiff could pursue his promissory estoppel claim.  Id. at *11, fn. 1.  Plaintiff's promissory estoppel and breach of contract claims arose from the same document.  Id. at *14.  If the agreements between Power Gas and the Plaintiffs/Counter-defendants parties are not found to be contracts, the same documents could provide the basis for a promissory estoppel claim.

Likewise, Power Gas can use the same evidence it provided in support of its breach of contract claim to support unjust enrichment in the event that no contract exists between the parties.  There is a factual dispute among the parties over repairs to the pipeline systems, such as whether adequate repairs have been made and who should pay for them.  (Doc. 71, exh. A, Deposition of Timothy James Lanzer, at 172:18-173:22; doc. 71, exh. B, Deposition of Blair Merkel, at 147:7-11, 151:5-7, 152:12-16.)  Taking the facts in the light most favorable to the non-moving party, Power Gas has made repairs for which it was not reimbursed.  If there is a contract governing repairs, Power Gas should pursue a breach of contract claim.  If there was no contract, on the other hand, the Plaintiffs/Counter-defendants have benefitted from, without paying for, work performed by Power Gas, so Power Gas has an unjust enrichment claim.

Power Gas should be allowed to proceed with promissory estoppel and unjust enrichment

claims in the alternative because a fact finder could determine that the relationships between the parties are not governed by contract.  It would be unfair to preclude the possibility of recovery under alternative theories at the summary judgment stage because to do so would leave Power Gas without any possible remedy in the event no binding contract exists.

<u>C.  Plaintiff/Counter-defendant Quality's Motion for Partial Summary Judgment Should Not Be Granted Because There Is a Dispute over the Validity of the Operating Agreement Between the Parties.</u>

<u>1.  Summary Judgment Should be Denied with Respect to Count VII of the Amended Complaint.</u>

In their Seventh Claim for Relief, Plaintiffs/Counter-defendants seek the equitable remedy of the removal of Power Gas as operator of the Quality System.  (Amended Complaint, at ¶ 42.)  They argue that the relevant "Operating Agreement has expired by its own terms and is not a legally binding agreement."  <u>Id.</u>  They state, "Due to this expiration, Power [Gas] should be removed as operator and Quality should be restored as the rightful operator of the Quality System."  (Motion for Partial Summary Judgment of Plaintiff Quality Oil & Gas, Inc., doc. 71, hereinafter "Quality's Motion," p. 10.)  However, if this agreement expired by its own terms, it did so November 23, 1993.  (Doc. 71, exh. I, Quality Pipeline Operating Agreement, at Article V.)  The instant lawsuit was not filed until 2004, and in the interim, no new operating agreement was negotiated.  (Lanzer Depo., at 172:5-8.)  Therefore, it is not clear what governs the working relationship between Quality and Power Gas.  As discussed above with regard to Power Gas's counterclaims, the relationship could be rooted in contract, but there is some possibility the facts support quasi-contract or promissory estoppel.  Quality has not shown an absence of issues of material fact, and it would be inappropriate to grant summary judgment in favor of the Plaintiff

15

on a contractual issue where it is not plain that a contract even exists.

2. Summary Judgment Should be Denied with Respect to Count XII of the Amended Complaint.

In their Twelfth Claim for Relief, Plaintiffs/Counter-defendants assert that Power Gas has breached its License to Use the Quality System. (Amended Complaint, at ¶¶ 66-68.) This claim arises from a letter from Power Gas to Quality dated March 23, 2004. Quality alleges that the plan laid out in the letter prevented them from marketing their own gas and imposed unauthorized fees. (Quality's Motion, p. 5.) Summary judgment cannot be granted on this count because there are unresolved issues of material fact.

The License was an agreement between Quality and Power Gas's predecessor, Energy Development Corporation ("EDC"), made on June 21, 1985. (License to Use Pipeline, doc. 71, exh. 3, hereinafter "License.") This agreement was executed two years after the parties entered the Operating Agreement, but the two contracts do not exist entirely independent of each other and must be considered together. See Mantua Mfg. Co. v. Commerce Exch. Bank, 75 Ohio St. 3d 1, 5, 661 N.E.2d 161, 165 (1996) ("Multiple documents should be construed together if they are part of the same transaction.") The License only makes sense within the context of a valid Operating Agreement between the parties. The License specifies that 5% of the sales price of the gas sold by EDC and Quality is to be paid to EDC, "which fee shall be utilized by EDC-Pipeline to first pay the pipeline cost, and any remaining funds shall be distributed [among the pipeline owners]." (License, ¶¶ 4, 8.) Unless EDC, and subsequently Power Gas, is acting as operator, there is no reason that it should receive the funds or pay the pipeline costs. Consequently, if, as Quality desires, the Operating Agreement is found to have expired, there

will be implications for the License.

Furthermore, there is a dispute concerning which party was first to breach the contract. Power Gas contends that the changes detailed in the March 2004 letter had to be made because "Quality never wanted to pay any bills that we sent them for fixing up the system.  So we generated that to recoup money on the system on a per unit basis."  (Merkel Depo., at 151:6-9.) Quality contends that the repairs they refused to pay for were made on Power Gas's own delivery pipeline, not the Quality System (Lanzer Depo., at 173:12-17), but for the purposes of summary judgment, the evidence must be construed in the light most favorable to the nonmoving party, Kraus, 915 F.2d at 229.  Viewed in that light, Quality breached the contract first by refusing to pay for repairs.

Power Gas also indicates that even after the March 2004 letter, Quality was free to market its own gas.  (Merkel depo., at 144:6-10.)  In that case, Power Gas has not in fact "unilaterally usurped Quality's ability to sell and market its own gas" as alleged in the Twelfth Claim for Relief.  (Amended Complaint, at ¶ 66.)

Summary judgment must be denied on Count XII because it would be premature to decide a question of a breach of the License while material issues exist regarding the validity of the underlying Operating Agreement and the facts surrounding the alleged breach.

### III.  SUMMARY

The Plaintiffs/Counter-defendants' Motion for Partial Summary Judgment on Counts V Through XII of Defendant Power Gas Marketing & Transmission, Inc.'s Amended Counterclaim (doc. 57) should be granted in part and denied in part.

Summary judgment should be granted in favor of the Plaintiffs/Counter-defendants on Count IX, Fraud Against Quality, because the moving party has demonstrated that there is no issue of material fact to be decided.  Summary judgment as to Count X, Civil Conspiracy, should also be granted for the same reason.

Summary judgment should be denied on Counts VI-VIII, Fraud Against Bonner, Burrows, and Equity, because the Defendant has designated specific facts showing there is a genuine issue for trial by presenting some evidence of damages resulting from a breach of a duty existing outside of the contractual relationship, if any, between the parties.  Summary judgment should also be denied with respect to Count XI, Promissory Estoppel, and Count XII, Unjust Enrichment, because the Plaintiffs/Counter-defendants themselves have called into question the validity of the contracts among the parties, and the Defendant is allowed to pursue these causes of action as alternatives to its breach of contract counterclaims.

Plaintiff/Counter-defendant Quality's Motion for Partial Summary Judgment (doc. 71) should be denied.  The outcomes of Counts VII and XII of the Amended Complaint both hinge on the resolution of the dispute between Quality and Power Gas over the existence of a valid Operating Agreement between the parties.  Neither count can be decided until the nature of the relationship between the parties is determined.  Because an issue of material fact exists, summary judgment cannot be granted.

RECOMMENDATION

It is recommended that the Plaintiffs/Counter-defendants' Motion for Partial Summary Judgment (doc. 57) should be granted in part and denied in part.

Plaintiff/Counter-defendant Quality's Motion for Partial Summary Judgment (doc. 71) should be denied.

Dated:  Aug. 17, 2006  /s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).