IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
:
BONNER FARMS, LTD., et al.,  :
:  CASE NO. 5:04 CV 2188
                    Plaintiffs,  :
:
         -vs-  :  ORDER & OPINION DENYING IN PART
:  AND GRANTING IN PART
POWER GAS MARKETING &  :  PLAINTIFF/COUNTER DEFENDANTS'
TRANSMISSION, INC., et al.,  :  MOTION FOR PARTIAL SUMMARY
:  JUDGMENT
                    Defendants.

------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

     This case is now before the Court on plaintiff/counter defendants Bonner Farms Ltd.'s ("Bonner" or "plaintiff") and Charles Burrows' ("Burrows" or "plaintiff") motion for partial summary judgment. (Docket No. 57). The plaintiffs initially brought suit in Portage County Court of Common Pleas on 27 September 2004, challenging defendant Power Gas Marketing & Transmission's ("Power Gas" or "defendant") rights to drill and operate oil and gas wells located on the plaintiffs' property. The case was removed to this Court on 2 November 2004 (Docket No. 1), and Power Gas filed counterclaims against the plaintiffs. The current operative complaint is the "Third Amended Complaint"[1] (Docket No. 97), and the current operative counterclaim is the "Amended Counterclaim and Third-Party Complaint" (Docket No. 47).

---

[1] At the time the motion for partial summary judgment was filed and at the time the Magistrate Judge issued his Report and Recommendation, the plaintiffs' "Second Amended Complaint" was the current operative complaint. (See Docket No. 46).

Bonner's and Burrows' motion for partial summary judgment was referred to United States Magistrate Judge Kenneth S. McHargh for a Report and Recommendation ("R&R"). Magistrate Judge McHargh recommended this Court grant in part and deny in part the plaintiffs' motion (Docket No. 83), and Bonner and Burrows filed objections (Docket No. 85). Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de novo those portions of the Magistrate Judge's R&R to which specific objections are made. Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

For the reasons that follow, the Court will adopt in part Magistrate Judge McHargh's recommendations, and will grant in part and deny in part the motion for partial summary judgment.

**I. BACKGROUND**

**A. Parties**

Bonner is a family-owned Ohio limited liability corporation, and Burrows is a trustee of the Burrows family trust. Both plaintiffs own property in Portage County, Ohio with multiple oil and gas wells ("Bonner Wells" and "Burrows Wells"). In addition to Bonner and Burrows, Equity Oil and Gas Funds, Inc. ("Equity Oil") and Quality Oil and Gas, Inc. ("Quality Oil") were also named plaintiffs on the complaint. Equity Oil and Quality Oil both settled their claims with the defendants and, upon a stipulated motion and an order of the Court, were dismissed from the case. (Docket Nos. 88, 90, 101,

2

102).[2]

Defendant Power Gas is a Delaware corporation, with a principal place of business in Pittsburgh, Pennsylvania. Power Gas asserts that it is the current owner and operator of the Bonner and Burrows Wells pursuant to certain lease agreements, and that it is the owner of some portion of the gas produced by these wells. Power Gas further asserts that it is the owner of the operating interest in the Portage Systems, a natural gas pipeline system which is connected to multiple oil and gas wells including the Bonner and Burrows Wells.

Defendants Thomas Fritz, Trustee Ray Gwilliam, L.A. Erber Partnership, and Deborah Weise may own an interest in some or all of the Burrows Wells, and they have been named defendants in this action so that they may identify and assert any interests they have associated with the Burrows Wells.

Power Gas filed a third-party complaint against Donna Langowski, asserting that Ms Langowski and/or Bonner built a structure that obstructs an easement Power Gas uses to access a well on the Bonner property.

## B. The Oil and Gas Lease Agreements

This case involves a dispute over the ownership and operating rights to the Bonner and Burrows Wells. The plaintiffs assert that Power Gas had lease rights to drill and operate the Bonner and Burrows Wells pursuant to certain lease agreements, but that such agreements are no longer valid. On 30 June 2004, Bonner and Burrows each

---

[2] Quality Oil also filed a motion for partial summary judgment, which Magistrate Judge McHargh addressed in his R&R. Because Quality Oil is no longer a party to this litigation, its motion for partial summary judgment is moot, and the Court need not address it.

filed with Portage County an Affidavit for Record of Cancellation pursuant to Ohio Revised Code § 5301.332,[3] asserting that Power Gas forfeited its rights under the lease agreements by failing to comply with pertinent provisions of the lease: "Failure to produce the wells located upon the leasehold acreage as required by the terms of said

---

[3] The Ohio Revised Code provides in pertinent part:

> Whenever leases of natural gas and oil lands recorded under section 5301.09 of the Revised Code concerning lands upon which there are no producing or drilling oil or gas wells become forfeited for failure of the lessee, his successors or assigns, to abide by specifically described covenants provided for in the lease, or because the term of the lease has expired, the lessor, his successors or assigns, may file for record an affidavit for forfeiture with the county recorder after serving notice by certified mail, return receipt requested, to the lessee, his successors or assigns, at his last known address, or if service is not obtained by certified mail, by giving notice by publication at least once in a newspaper of general circulation in the county in which the land is located of the lessor's intent to declare the lease forfeited.
> * * *
> After thirty days and not more than sixty days from the date of proof of mailing or publication of the notice, the lessor, his successors or assigns, may file with the county recorder an affidavit of forfeiture setting forth that he is the lessor of an oil or gas lease; the volume and page of the lease record where the oil or gas lease is recorded; that the lessee, his successors or assigns, has failed and neglected to comply with specifically described covenants provided for in the lease, reciting the facts constituting such failure, or that the term of the lease has expired; that there are no producing or drilling oil or gas wells on the leased premises; that the lease has been forfeited and is void; and that notice was served on the lessee, his successors or assigns, or publication made and the manner and time thereof.
>
> If the lessee, his successors or assigns, claims that the lease is in full force and effect, the lessee, his successors or assigns, shall, within sixty days after the mailing or publication of the notice of the lessor of his intention to declare the lease forfeited, notify the person who filed the affidavit of forfeiture of the claim, and file for record an affidavit with the office of the county recorder of the county in which the land is situated stating that the lease has not been forfeited and that the lessee, his successors or assigns, still claim that the lease is in full force and effect.
> * * *

O.R.C. § 5301.332.

lease or leases and in violation implied requirements of due diligence to market and sell the product from said wells as would a prudent operator under like circumstances." (Docket No. 97 Ex. B and D).  Power Gas maintains that it continues to be the rightful owner and operator of the Bonner and Burrows Wells under valid lease agreements, and that Bonner and Burrows are wrongfully converting and misappropriating gas owned by Power Gas in violation of these agreements.

Although the parties all agree that lease agreements are the source of Power Gas' rights to drill and operate the Bonner and Burrows Wells, they dispute which specific lease agreements did or continue to govern the parties' relationships. The plaintiffs and defendant are successors to the relevant lease agreements, which date back between 1958 and 1979.  The lease agreements are not identifiable by the names of the current parties, but instead by a description of a tract of land and their respective county registry numbers.  In the first and second amended complaint, the plaintiffs assert that the Bonner Wells were drilled and operated pursuant to the lease recorded in Portage County Volume 83, Page 362, and that the Burrows Wells were drilled and operated pursuant to leases recorded in Portage County Volume 77, Page 48, Volume 47, Page 483, and Volume 47 Page 485.  (Docket No. 27 Ex. A and C; Docket No. 46 ¶¶ 6, 12).  These are the leases referenced in the Affidavits for Record of Cancellation filed by Bonner and Burrows.  In its response pleading, Power Gas admits that some of the Bonner and Burrows Wells may have been drilled pursuant to these agreements. (Docket No. 56 ¶¶ 6, 12).

In their third amended complaint, the plaintiffs assert that the Bonner and Burrows Wells were drilled and operated pursuant to leases different than those

5

identified in the second amended complaint. Bonner now asserts that its wells were drilled and operated pursuant to the lease recorded in Portage County Volume 77, Page 48, and Power Gas denies this allegation. (Docket No. 97 ¶ 6 and Ex A; Docket No. 99 ¶ 6). Burrows now asserts that its wells were drilled and operated pursuant to the lease recorded in Portage County Volume 48, Page 601 *or* the lease recorded in Portage County Volume 96, Page 45. (Docket No. 97 ¶ 12 and Ex C-1 and C-2). Power Gas admits that the lease recorded in Volume 96, Page 45 is the correct lease, but denies the allegation with respect to the lease recorded in Volume 48, Page 601. (Docket No. 99 ¶ 12).

All of the leases asserted in the second and third amended complaints contain nearly identical provisions which set forth the rights and obligations of the lessor to acquire and use gas from wells that are subject to the lease agreements. Each lease provides that the lessor may lay a "pipeline" or "line" to a gas well on the leased property for the purpose of acquiring up to 200,000 cubic feet of natural gas free of cost each calendar year, to be consumed for the domestic use of a single dwelling located on the leased land. One lease further provides that the lessor may also use gas for agricultural activities on the leased lands. (See Docket No. 97 Ex. C-2). All six leases provide that any gas consumed beyond the 200,000 cubic feet limit shall be paid for by the lessor.

**C. Procedural Background**

In support of their claim that Power Gas forfeited its rights to operate the Bonner and Burrows Wells, the plaintiffs assert three causes of action against Power Gas in their third amended complaint:

6

1. Declaratory and injunctive relief that Power Gas does not have the right to operate the Bonner Wells because the operative lease agreement is no longer valid, and that Bonner is entitled to royalty payments for the period following the alleged termination of the lease;

2. The same relief stated above relating to the operative lease agreement between Burrows and Power Gas which governs the operating rights of the Burrows Wells; and

3. A negligence claim by Bonner against Power Gas, asserting that Power Gas' negligence environmentally contaminated the Bonner property.

Power Gas maintains that the relevant lease agreements are still valid, that it continues to have drilling and operating rights of the Bonner and Burrows Wells, and that the plaintiffs have breached their respective lease agreements.  In its counterclaim, Power Gas alleges that Bonner tapped into the Portage System to supply gas to a large grain dryer, and that Burrows tapped into a different gas line owned by Power Gas and provided gas to multiple buildings on its property.  Power Gas further asserts that the plaintiffs made misrepresentations as to the amount of gas they were consuming and the purpose for which they used that gas.  Based on these allegations Power Gas asserts ten counterclaims:

1. Breach of contract against Bonner;

2. Breach of contract against Burrows;

3. Tort law claim of conversion against Bonner and Burrows;

4. Tort law claim of fraud against Bonner for misrepresentations or omissions of material fact;

5. Tort law claim of fraud against Burrows on the same basis;

6. Promissory estoppel claim against Bonner and Burrows on the grounds that each party promised to provide accurate information regarding the gas produced in their respective wells, but that each party failed to fulfill those promises;

7.  Unjust enrichment claim against Bonner and Burrows, alleging that Bonner and Burrows were unjustly enriched by their actions;

8.  An action for accounting concerning the quantity and volume of gas produced by the Bonner and Burrows Wells, the amount of gas consumed by Bonner and Burrows, and the amount of proceeds received by Bonner and Burrows from selling gas to third parties;

9.  Injunctive relief ordering Bonner and Burrows to permit Power Gas to install equipment and take additional actions on their property to determine whether Bonner and Burrows are converting or misappropriating gas; and

10. Injunctive relief ordering Bonner to remove obstructions from Power Gas' easement to access the oil and gas well known as the Gould Well on the Bonner property.

In addition to the counterclaims, Power Gas filed a third-party complaint against Donna Langowski, asserting that it is the owner and operator of the Gould Well which is located on land that is or was owned by Bonner, and that Ms Langowski and/or Bonner built a structure that interferes with an easement used by Power Gas to access this particular well.  Power Gas seeks injunctive relief ordering Ms Langowski, along with Bonner, to remove obstructions to the easement used by Power Gas to access the Gould Well.

Bonner and Burrows now motion the Court to dismiss on summary judgment Power Gas' claims for conversion, fraud, promissory estoppel, and unjust enrichment. In his R&R, Magistrate Judge McHargh recommends this Court deny the motion with respect to these four counterclaims.

## II.  STANDARD OF REVIEW

Power Gas argues that the plaintiffs' motion for summary judgment challenges

8

the sufficiency of the pleadings rather than the sufficiency of the evidence, and, therefore, the Court should consider the motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and consider only the allegations asserted in the complaint. A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). In ruling on such a motion, courts consider only those allegations in the pleadings and exclude any other extraneous material. Id. If, however, materials outside the pleadings are presented to and considered by the court, then such a motion shall be considered under the standards of Rule 56. Id. Bonner and Burrows do not identify the Civil Rule under which their motion is brought, although the motion is captioned as a motion for summary judgment. Because Power Gas submitted evidence outside the pleadings, including affidavits and excerpts from deposition transcripts, which the Court considered in reaching its findings, this Court will make findings based on the standards set forth in Rule 56.

Disposition on summary judgment is appropriate if the evidence in the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, this party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." Celotex v. Catrett, 477 U.S. 317, 323 (1986); see Betkerur v.

Aultman Hosp. Ass'n., 78 F.3d 1079, 1087 (6th Cir. 1996).  The non-moving party, however, must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations and citations omitted).

As summary judgment is a mechanism to dispose of "factually unsupported claims or defenses," Celotex, 477 U.S. at 323-24, the rule is proper only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir. 1989).

### III.  LAW AND ANALYSIS

Bonner and Burrows move this Court to dismiss as a matter of law Power Gas' counterclaims of conversion, fraud, promissory estoppel, and unjust enrichment, arguing that each of these claims duplicate Power Gas' breach of contract claims.  The Court will address the tort claims and quasi-contract claims separately.

**A.  Tort Claims**

Power Gas asserts a counterclaim for conversion against Bonner and Burrows on the basis that the plaintiffs converted and misappropriated gas owned by Power Gas.[4]  The fraud counterclaim is based on the allegation that the plaintiffs made

---

[4] "Under Ohio law, conversion is 'the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" McCaughey v. Garlyn Shelton, Inc., 208 Fed.Appx. 427, 435 (6th Cir. 2006) (quoting Joyce v. Gen. Motors Corp., 49 Ohio St.3d 93 (1990)).

10

affirmative misrepresentations or omissions to Power Gas regarding the quantity and volume of gas produced by the Bonner and Burrows Wells, the amount of gas tapped from Power Gas-owned pipelines by Bonner, Burrows, and third parties, and the appropriation of this gas to third parties.[5]

It is not a tort to breach a contract in Ohio.  Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 602 (6th Cir. 1988).  A tort claim arises between contracting parties only where a party "breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed."  Battista v. Lebanon Trotting Assoc., 538 F.2d 111, 117 (6th Cir. 1976).  Thus, the tort liability of contracting parties arises from the breach of a duty imposed by law because of the parties' relationship, and not the breach of a duty created by the contract.  Id.

Magistrate Judge McHargh concluded that the fraud and conversion liabilities asserted by Power Gas arise from duties independent of the plaintiffs' contractual duties.  In this R&R, the Magistrate Judge recognizes that the lease agreements contemplate the lessors drawing gas from a "well," but that the counterclaim asserts Bonner converted gas by tapping into a "pipeline."  Based on this distinction, Magistrate Judge McHargh reasons that Power Gas asserts a claim of conversion based on

---

[5] Under Ohio law, the elements of fraud are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."  Burr v. Stark County Bd. of Comm'rs, 23 Ohio St.3d 69 (Ohio 1986).

allegations outside the scope of the lease agreement, and, therefore, the conversion claims seek damages beyond the scope of the breach of contract claims.[6]  Magistrate Judge McHargh further recommends that the fraud counterclaim should survive summary judgment, because it also arises from a duty independent of the parties' lease agreements.  This Court respectfully disagrees.

As a preliminary matter, Power Gas' fraud claim as set forth in the amended counterclaim fails to satisfy the heightened pleading standard required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires fraud claims to "be stated with particularity."  The Sixth Circuit interprets Rule 9(b) liberally, requiring the claimant to assert at a minimum the "time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 322 (6th Cir. 1999)(citation omitted).  Thus, general or conclusory allegations do not satisfy Rule 9(b).

The Amended Complaint asserts the following claim for fraud against Bonner and Burrows:

"Bonner [Burrows] has made affirmative misrepresentations and/or has

---

[6] With respect to Power Gas' conversion claim, the factual allegations asserted against Burrows and Bonner differ.  Bonner is alleged to have tapped into the Portage System for the purpose of supplying gas to a grain dryer, whereas Burrows is alleged to have tapped into some other Power Gas-owned pipeline for the purpose of supplying gas to multiple structures on its property.  In his R&R, Magistrate Judge McHargh addresses Power Gas' conversion claim with respect to the factual allegations raised against Bonner, but does not address conversion with respect to the allegations asserted against Burrows. (Docket No. 83 pp. 10-11).  This Court presumes that the Magistrate Judge intended that his legal analysis on the conversion claim apply equally to the conversion claims against both plaintiffs.

> omitted to disclose material information to Power Gas concerning a
> number of material facts and issues, including but not limited to (a) the
> quantity and volume of gas produced by the Bonner [Burrows] Wells; (b)
> whether Bonner [Burrows] is taking or appropriating any of the gas
> produced by the Bonner [Burrows] Wells for use by Bonner [Burrows]
> and/or for sale to third parties; (c) the amount of gas loss from the
> Portage Systems that should properly be allocated to Bonner [Burrows],
> Power Gas, and others who own and/or lease wells that are connected
> to the Portage Systems; and (d) whether others, including Burrows
> [Bonner] and Equity are wrongfully taking and misappropriating gas from
> the Portage Systems and/or any other wells connected to the Portage
> Systems."

(Docket No. 47 ¶¶ 42, 49). This allegation describes generally the nature of the misrepresentations or omissions.  It does not, however, describe with any particularity the content of the alleged misrepresentations or omissions, when or where these misrepresentations were made, nor a fraudulent scheme or specific injury that resulted from the alleged fraudulent acts.  A review of the parties' pleadings and memoranda provides this Court with nothing regarding the context under which these alleged misrepresentations were made or any reason that Bonner and Burrows would have been responsible for supplying this information outside their contract obligations.  Thus, the counterclaims for fraud must fail for failure to plead with particularity pursuant to Rule 9(b).

With respect to the merits of Power Gas' tort law claims, Power Gas' tort law claims duplicate its breach of contract claims.  Although there is still a genuine issue of material fact regarding which leases specifically govern the parties' relationships, the parties agree that one of six lease agreements identified in the second and third amended complaints created the contractual relationship between Power Gas and Bonner and Power Gas and Burrows.  Each of these contracts contain language

13

governing the lessors' rights to acquire and use natural gas drilled and stored in wells on the leased property.   Power Gas' tort counterclaims are based on allegations that Bonner and Burrows misappropriated gas from Power Gas-owned pipelines, and that they failed to notify Power Gas as to how much gas they were consuming and where and how they were acquiring the gas.  These tort claims are, in effect, allegations that Bonner and Burrows breached their contract obligations by acquiring natural gas and using it in a manner not permitted by the lease agreements.

Moreover, the Court concludes that the distinction made by Power Gas and the Magistrate Judge between tapping into a "pipeline" and tapping into a "well" is a matter of contract interpretation.  A trier-of-fact will need to determine whether the plaintiffs acquired gas by a means not agreed upon in the contract.  If Power Gas' allegations are proven true, then such actions could be construed as a breach of the lease agreements and Power Gas could be entitled to damages determined under contract law.

Accordingly, because Power Gas cannot recover damages in tort and contract for the same claims, the conversion and fraud claims will be dismissed as a matter of law.

**B.  Quasi-Contract Claims**

In their motion for summary judgment, Bonner and Burrows argue that the promissory estoppel and unjust enrichment claims duplicate the breach of contract claims, and further argue that Power Gas has failed to identify facts which would support the promissory estoppel claim.  Power Gas argues that these claims are asserted in the alternative to its breach of contract claims.  Magistrate Judge McHargh

14

correctly reasoned that these quasi-contract claims should survive summary judgment because Ohio law permits breach of contract and quasi-contract claims to be asserted in the alterative.

Promissory estoppel and unjust enrichment are quasi-contractual or equitable claims that may be pled in the alternative to a breach of contract claim. See Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim ... alternately or hypothetically, either in one count ... or in separate counts. * * * A party may also state as many separate claims ... as the party has regardless of consistency and whether based on legal [or] equitable ... grounds."). To prevail on a promissory estoppel claim in Ohio, the claimant must demonstrate "the existence of a promise that the promisor should reasonably expect to induce action or forbearance by the promisee and that does induce such action or forbearance." Rucker v. Everen Secs., Inc., 102 Ohio St. 3d 1247, 1248 (Ohio 2004). Although promissory estoppel and breach of contract claims are "different creatures of the law," they are related to the extent that promissory estoppel is considered a substitute for the consideration requirement of a valid contract. Lynch v. Sease, 2007 WL 2301995, * 2 (6th Cir. 2007). An unjust enrichment claim requires a showing that the claimant conferred a benefit on the party defendant, and retention of that benefit without compensation would be unjust. Johnson v. Microsoft Corp., 106 Ohio St. 3d 278, 286 (Ohio 2005). Unlike a contract, unjust enrichment does not arise from a "meeting of minds," but is instead implied and imposed by law to prevent the defendant from enjoying benefits which equity dictates should not be retained without compensation. Hughes v. Oberholtzer, 162 Ohio St. 330, 330 (Ohio 1954). Thus, where there is a valid contract between parties, quasi-contractual relief is

not an available remedy.  O'Neill v. Kemper Ins. Companies, ___ F.3d ___, 2007 WL 2198342, *5 (6th Cir. 2007).  A claimant may therefore plead for relief under both contract law and quasi-contract law, but she or he cannot recover under both theories.

Power Gas' promissory estoppel and unjust enrichment counterclaims are still viable causes of action at this stage of the litigation.  The heart of the parties' dispute is which leases created the contractual relationship between the plaintiffs and defendant, and whether those contracts remain valid and enforceable.  Although Power Gas will not be able to recover under both contract and quasi-contract theories, it would be premature to dismiss the quasi-contract claims at this time given the uncertainty as to the existence of valid enforceable lease agreements between the parties.  Should the trier-of-fact determine there are no enforceable contracts binding the parties, then Power Gas may be entitled to relief under these quasi-contract theories.  Accordingly, summary judgment with respect to the counterclaims for promissory estoppel and unjust enrichment will be denied.

### IV.  CONCLUSION

For the reasons set forth above, Magistrate Judge McHargh's R&R is adopted in part.  The plaintiffs' motion for partial summary judgment with respect to the conversion and fraud counterclaims is granted, but summary judgment with respect to the promissory estoppel and unjust enrichment counterclaims is denied.

The plaintiffs' case shall proceed on the three causes of action raised in their "Third Amended Complaint:"

1. Declaratory and injunctive relief that Power Gas no longer has permission to operate the Bonner Wells and that Bonner is entitled to royalty payments for the period following the alleged termination of the lease;

2. The same relief stated above relating to the operative lease agreement between Burrows and Power Gas which governs the operating rights of the Burrows Wells; and

3. Bonner's negligence claim against Power Gas for environmental contamination.

(Docket No. 97). The defendants' case shall proceed on the following counterclaims:

1. Breach of contract against Bonner;
2. Breach of contract against Burrows;
3. Promissory estoppel claim against Bonner and Burrows;
4. Unjust enrichment claim against Bonner and Burrows;
5. Action for accounting;
6. Injunctive relief ordering Bonner and Burrows to permit Power Gas to install equipment and take additional actions on their property; and
7. Injunctive relief relating to obstructions to the Gould Well on Bonner's property.

(Docket No. 47).

    IT IS SO ORDERED.

                                                /s/ Lesley Wells
                                                UNITED STATES DISTRICT JUDGE

Date:   27 August 2007