IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BONNER FARMS, LTD., et al., | : | CASE NO.  5:04 CV 2188 |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | ORDER & OPINION DENYING |
| -v- | : | DEFENDANTS' RENEWED MOTION |
|  | : | FOR JUDGMENT AS A MATTER OF |
| POWER GAS MARKETING & | : | LAW OR, IN THE ALTERNATIVE, A |
| TRANSMISSION, INC.,  et al., | : | NEW TRIAL |
|  | : |  |
| Defendants. | : |  |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 24 December 2007, defendants Power Gas Marketing & Transmission Inc., Deborah D. Weise, and Thomas A Fritz (collectively "Power Gas" or "defendants") filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial, pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure.  (Docket No. 172).  Plaintiff Bonner Farms, Ltd. ("Bonner")[1] filed a brief in opposition on 28 January 2008 (Docket No. 177), and the defendants replied on 14 February 2008 (Docket No. 178).  For the reasons set forth below, the defendants' motion will be denied.

---

[1]  This action was initially brought by Bonner Farms Ltd. and three additional plaintiffs: Charles Burrows, Trustee ("Burrows"), Equity Oil & Gas Funds, Inc. ("Equity Oil"), and Quality Oil and Gas, Inc. ("Quality Oil").  Prior to the commencement of trial, Equity Oil and Quality Oil both settled their claims with the defendants and, upon a stipulated motion and an order of this Court, were dismissed from the case. (Docket Nos. 88, 90, 101, 102).  Burrows settled his claims with the defendants after a jury returned interrogatory decisions in the first phase of a bifurcated trial (explained below), but before the Court issued an order granting Bonner declaratory relief.  Accordingly, Bonner remains as the sole plaintiff in the instant action.

## I.  BACKGROUND

This case involves a dispute over the ownership and operating rights to oil and gas wells located on Bonner's property ("Bonner Wells").  Bonner initially brought suit in Portage County Court of Common Pleas on 27 September 2004, challenging Power Gas' rights to drill and operate the Bonner Wells pursuant to a lease agreement.  The case was removed to this Court on 2 November 2004 (Docket No. 1), and Power Gas filed counterclaims against Bonner.

In its third amended complaint, the current operative complaint, Bonner asserted that Power Gas no longer had the lease rights to drill and operate the Bonner Wells pursuant to a certain oil and gas lease agreement (hereinafter "Leet Lease"), because the agreement expired when the defendants stopped producing oil and gas in paying quantities from the wells and stopped maintaining operations on the Bonner property. (Docket No. 97).  On 30 June 2004, Bonner filed with Portage County an Affidavit for Record of Cancellation pursuant to Ohio Revised Code 5301.332,[2]  asserting that Power

---

[2]  The Ohio Revised Code provides in pertinent part:

Whenever leases of natural gas and oil lands recorded under section 5301.09 of the Revised Code concerning lands upon which there are no producing or drilling oil or gas wells become forfeited for failure of the lessee, his successors or assigns, to abide by specifically described covenants provided for in the lease, or because the term of the lease has expired, the lessor, his successors or assigns, may file for record an affidavit for forfeiture with the county recorder after serving notice by certified mail, return receipt requested, to the lessee, his successors or assigns, at his last known address, or if service is not obtained by certified mail, by giving notice by publication at least once in a newspaper of general circulation in the county in which the land is located of the lessor's intent to declare the lease forfeited.
* * *
After thirty days and not more than sixty days from the date of proof of mailing or publication of the notice, the lessor, his successors or assigns, may file with the county recorder an affidavit of forfeiture setting forth that he is the lessor of an oil or gas lease; the volume and page of the lease record where the oil or gas lease is recorded; that the lessee, his successors or assigns, has failed and neglected to comply with specifically described covenants provided for in the lease, reciting the facts constituting such failure, or that the term of the lease has expired; that there are no producing or drilling oil or gas wells on the leased premises; that the lease has been forfeited and is

Gas forfeited its rights under the Leet Lease agreement by failing to comply with pertinent provisions of the lease: "Failure to produce the wells located upon the leasehold acreage as required by the terms of said lease or leases and in violation implied requirements of due diligence to market and sell the product from said wells as would a prudent operator under like circumstances." (Docket No. 97 Ex. B and D).

In response, Power Gas maintained that the Leet Lease remains in full effect and that it continues to be the rightful operator of the Bonner Wells under the terms of the lease. Power Gas asserted the affirmative defenses of estoppel, based on the allegation that Bonner accepted royalty payments pursuant to the terms of the Leet Lease after Bonner commenced this action, and unclean hands, based on Bonner allegedly having taken gas from Power Gas without its consent. (Docket No. 99).

A jury trial began on 3 December 2007. Bonner sought a declaratory order from the Court that the Leet Lease had expired by operation of law, that Power Gas therefore no longer had permission to operate the Bonner Wells pursuant to the lease, and that Bonner was entitled to damages for oil and gas drilled from its wells for the period following the alleged termination of the lease. Bonner also pursued a negligence claim against the defendants for alleged environmental contamination to its property. In addition to asserting the affirmative defenses of unclean hands and estoppel, Power Gas

---

void; and that notice was served on the lessee, his successors or assigns, or publication made and the manner and time thereof.

If the lessee, his successors or assigns, claims that the lease is in full force and effect, the lessee, his successors or assigns, shall, within sixty days after the mailing or publication of the notice of the lessor of his intention to declare the lease forfeited, notify the person who filed the affidavit of forfeiture of the claim, and file for record an affidavit with the office of the county recorder of the county in which the land is situated stating that the lease has not been forfeited and that the lessee, his successors or assigns, still claim that the lease is in full force and effect.
* * *

3

raised a number of counterclaims against the plaintiff, including breach of contract, promissory estoppel, unjust enrichment, an action for accounting, and injunctive relief relating to the operations of the Bonner Wells.

Due to the number and nature of the claims and counterclaims, the Court bifurcated the trial into two phases. In the first phase, the parties presented evidence to the jury in order for the jurors to make findings of fact regarding specific issues as to Bonner's claim for declaratory relief and Power Gas' affirmative defenses of estoppel and unclean hands:[3] (1) whether Power Gas stopped producing oil or gas in paying quantities from the Bonner Wells; (2) whether Power Gas stopped maintaining operations on the Bonner property; (3) whether Bonner accepted production royalty payments pursuant to the Leet Lease in the years 2005, 2006, and/or 2007; and (4) whether Bonner took gas from the Pochedly Pipeline System without the consent of Power Gas.

The jury made the following findings of fact as to Bonner's claims and Power Gas' defenses: (1) as of 31 December 2004, Power Gas had stopped producing oil or gas in paying quantities from all of the Bonner Wells; (2) Power Gas stopped maintaining operations on the property subject to the Leet Lease as of 30 June 2004; and (3) Bonner took gas from the Pochedly Pipeline System without the consent of Power Gas on 1 September 2004. (Docket No. 160). With respect to the interrogatory inquiring about royalty payments allegedly accepted by Bonner after the commencement of this

---

[3] Interrogatories #1 - #4 sought findings of fact on issues addressing the claims asserted by plaintiff Bonner, and Interrogatories #5 and #6 addressed claims asserted by former plaintiff Burrows. Because Burrows settled its claims with Power Gas and is no longer a party to this action, the interrogatories addressing Burrows' claims are not addressed in this order.

4

litigation, the jury responded that it did not find by a preponderance of the evidence that Bonner accepted royalty payments from Power Gas under the provisions of the Leet Lease in 2005, 2006, or 2007.[4]

Based on these findings of fact and the parties' stipulated facts, this Court issued a declaratory order declaring that the Leet Lease expired on 31 December 2004, the last day the jury found that any of the Bonner Wells were producing in paying quantities. (Docket No. 165).  The Court's order further declared that the defendants' affirmative defense of unclean hands was not applicable because the defense was based on extraneous transgressions that did not affect the equitable relations of the parties with respect to the validity of the Leet Lease.  Id.  With respect to the defendants' estoppel defense, the Court concluded that because the defense was asserted solely on the allegation that Bonner accepted royalty payments pursuant to the Leet Lease after the commencement of the litigation in the years 2005, 2006, and 2007 and because the jury did not find by a preponderance of the evidence that Bonner accepted royalty payments for those three years, the Court did not have a factual finding from the jury upon which to hold that Bonner accepted benefits from Power Gas pursuant to the Leet Lease.  Id.

---

[4] In order for the Court to render a legal decision as to whether the defendants are shielded from liability under the doctrine of estoppel, the jury was charged with making a finding of fact as to whether the defendants proved by a preponderance of the evidence that the checks sent to Bonner in 2005, 2006, and 2007 were for royalties owed pursuant to the Leet Lease.  The jury concluded that there was insufficient evidence to find that the checks represented royalty payments and answered "No" to the following interrogatory:

> Do you find by a preponderance of the evidence that plaintiff Bonner Farms, Ltd. accepted royalty payments under the provisions of the Leet Lease from defendant Power Gas Marketing & Transmission, Inc. for any of the years listed below?
> 2005: _____ Yes       _____ No
> 2006: _____ Yes       _____ No
> 2007: _____ Yes       _____ No

(Docket No. 160, Interrogatory #3).

After the Court issued its order, the parties jointly moved the Court for a judgment in favor of Bonner, stipulating to damages and a dismissal as to the parties' remaining claims and counterclaims. (Docket No. 166). The Court signed the final judgment entry on 11 December 2007. (Docket No. 168).

## II.  STANDARD OF REVIEW

In diversity actions, federal courts consider Federal Rule of Civil Procedure 50 under the standards applicable under the law of the forum state.  K & T Enterprises, Inc. v. Zurich Ins. Co., 97 F.3d 171, 176 (6th Cir. 1996).  In Ohio, "[j]udgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party."  Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th Cir.2005) (citations omitted).  In deciding a motion for judgment as a matter of law pursuant to Rule 50, this Court may not consider the weight of any evidence presented nor the credibility of the witnesses.  Cantrell v. GAF Corp., 999 F.2d 1007, 1014-15 (6th Cir.1993).  Instead, the court's role is to determine whether a party produced sufficient evidence at trial on which a reasonable jury could have based its decision.  See Barnes, 401 F.3d at 738.

A motion for a new trial filed pursuant to Rule 59(a) may be granted where "a jury has reached a seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being

unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 405 (6th Cir. 2006)(internal quotations omitted).

### III.  LAW AND ANALYSIS

**A.  Sufficiency of Evidence**

The defendants asserted at trial that the plaintiff should be estopped from pursuing its claims because it accepted royalty payments after the commencement of the litigation in 2005, 2006, and 2007.  In Ohio, a lessor of an oil and gas lease who accepts the benefits of the lease during the pendency of litigation is estopped from pursuing an action against the lessee to terminate the lease.  Rayl v. East Ohio Gas Co., 46 Ohio App. 2d 175, 179, 348 N.E.2d 390 (Ohio App. 9 Dist., April 23, 1975)(holding that the plaintiff lessors were estopped from pursuing their litigation to terminate a gas storage agreement because they accepted rental payments and free gas pursuant to the terms of the agreement).  However, because the jury in the instant case did not find by a preponderance of the evidence that the plaintiff accepted royalty payments pursuant to the Leet Lease for these three years, this Court did not have a factual finding upon which to conclude that Bonner was estopped from pursuing its claims under Ohio law.

Power Gas now argues in its Rule 50(b) motion that the jury's findings as to Bonner's acceptance of royalties are against the clear weight of the evidence and should be set aside on the basis that (1) Bonner stipulated to receiving and depositing twenty-one checks from Power Gas after the litigation was filed, and (2) Bonner's party

representative Richard Bonner stated on cross-examination that two additional checks received by him in 2005 by Power Gas represented royalties from oil and gas drilled from the Bonner Wells. (Docket No. 172).

In determining a Rule 50(b) motion, the role of this Court is not to substitute its judgment for that of the jury, but to determine whether the defendants sufficiently produced evidence to supports its defense and whether the jury's findings regarding the alleged acceptance of royalties was reasonable in light of the evidence presented at trial. See Barnes, 401 F.3d at 738. Here, the parties presented the jury with conflicting evidence as to the purpose for which the 21 checks in question were paid and accepted. In support of its claim for a declaratory order, the plaintiff offered documentary and testimonial evidence to demonstrate that the Leet Lease had expired because Power Gas had stopped producing oil and gas in paying quantities and had stopped maintaining operations on the Bonner property (See Docket No. 175, Tr. pp. 6-8, 44-46, 80-81; Crissinger testimony, Tr. pp. 21-103), that Bonner was therefore entitled to 100% of the production profits from the wells after the expiration of that lease, and, finally, that the checks received from Power Gas by Bonner in 2005, 2006, and 2007 were not royalties but, instead, represented 12 ½% of the profits owed by Power Gas to Bonner for the oil and gas drilled from the Bonner Wells after the expiration of the Leet Lease (See Docket No. 175, Tr. pp. 31-33).

In its defense, Power Gas produced copies of the 21 checks that the parties stipulated were sent to Bonner from Power Gas after the lawsuit was filed.[5]  (Trial Transcript from 5 December 2007, pp. 188-189).  In addition, on cross-examination, the defendants' counsel questioned Mr. Bonner as to the nature of two additional checks sent in 2005:

| | |
|---|---|
| Q. | What this letter does, Mr. Bonner, is explain to you that your account had been suspended in error by Power Gas, and the enclosed checks were being sent to you because they had some past due royalties that they had not paid because of that error.  Isn't that true? |
| A. | I think it's a coverup.  I really do.  Excuse me.  I don't know what it means.  It's legal stuff. |
| Q. | That's what the letter says though; right, sir? |
| A. | If you say so. |
| Q. | And those checks were royalty checks; right, sir? |
| A. | Yes. |
| Mr. Keller: | Objection.  We stipulated he received checks, he cashed them.  The characterization of those checks is a question that depends on whether the lease is still in effect or not. |
| The Court: | Yes it does. |

 (Docket No. 175 pp. 47-48).

Power Gas' estoppel defense and its Rule 50(b) motion are both based on the *assumption* that the twenty-one checks were royalty payments, but the defendants identify no evidence presented at trial, nor does the Court see any evidence in the record, which would have demonstrated to the jury that the 21 checks represented royalty payments.[6]  However, as explained above, the plaintiff did present evidence to

---

[5]  Stipulation # 26 and # 27 each state that "Bonner received and deposited the following checks, which are included in Defendants' Exhibit UU,  from Power Gas Marketing & Transmission, Inc:" [the stipulation then lists twenty-one checks by number].

[6]  In his opening statement, the defendants' counsel stated he would call Robert Gessner, the vice president of finance and accounting for Northcoast Energy, to explain to the jury about the royalty payments Bonner accepted

the jury to support its position that the 21 checks represented partial payments of the gross profits the plaintiff asserts it was entitled to because the lease had expired by operation of law.

Moreover, although Richard Bonner responded "yes," on cross-examination as to whether two additional checks received after the commencement of this litigation were for royalty payments, his answers immediately preceding that response as well as his testimony on direct as to how much money he was owed by the defendants was conflicting evidence the jury could consider in determining whether Bonner received royalty payments pursuant to a valid lease agreement after it initiated this action. Contrary to the defendants' presumption that "this should not have been a difficult issue for the jury to decide," there was a clear factual dispute as to the characterization of the checks in question. The parties presented the jury with conflicting evidence addressing this issue and, based on this evidence, the jury reasonably concluded that the defendants failed to demonstrate by a preponderance of the evidence that Bonner accepted royalty payments pursuant to the Leet Lease after the commencement of its lawsuit.

Accordingly, the jury's answers to the interrogatory will not be set aside on the basis of insufficient evidence.

---

from Power Gas after the commencement of this litigation.  (Opening Statements Tr. p. 36).  Although the plaintiff questioned Mr. Gessner during its case-in-chief about matters other than the royalty payments, the defendant elected not to question Mr. Gessner about the royalty payments and, instead, moved to admit into evidence copies of the 21 checks without any supporting testimony.  (Trial Transcript from 5 December 2007, pp. 188-189).

10

**B. Proceedings Influenced by Prejudice or Bias**

Civil Rule 59 provides that a new trial may be granted where the earlier trial proceedings were influenced by prejudice or bias. If counsel makes improper statements to a jury during closing arguments, the trial court may set aside the jury verdict and order a new trial if there is a "reasonable probability" that the jury verdict was influenced by the argument. Bridgeport Music, Inc. v. Justin Combs Pub., 507 F.3d 470, 478 (6th Cir. 2007). Whether such misconduct is of "a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination." City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980). In determining whether to set aside a jury verdict and order a new trial on the basis of prejudice and bias, the Sixth Circuit requires courts to examine the totality of the circumstances, including consideration of the following factors: (1) the nature of the comments, (2) the relevancy of the issue raised before the jury, (3) the manner in which the court treated the comments, (4) the strength of the case, and (5) the verdict itself. Id.

Because Power Gas failed to raise objections to the alleged improper statements during closing arguments, the Sixth Circuit requires a "heightened degree of prejudice in order to grant a new trial." Bridgeport Music, Inc., 507 F.3d at 478.

In its motion for a new trial, Power Gas argues that the jury's findings as to whether Bonner accepted royalty payments in 2005, 2006, and/or 2007 were improperly influenced by an argument made by Bonner's counsel during closing statements. The plaintiff's counsel argued in his closing statement that the terms of the Leet Lease provided that the lease automatically expired if the lessor Power Gas stopped

11

producing oil and gas in paying quantities from the Bonner Wells or stopped maintaining operations on the Bonner property.  Plaintiff's counsel further argued that if the jury concluded that Power Gas had stopped producing oil and gas in paying quantities prior to 2005, then the checks received in 2005-2007 could not be royalty checks owed pursuant to the lease agreement because the lease agreement was no longer valid.  Power Gas now contends that this argument is contrary to the law of estoppel in Ohio and, in essence, eviscerates the very defense this Court ruled the defendants were entitled to raise.

Considering the circumstances under which the plaintiff's closing argument was made and the factors set forth in Peter Kiewit Sons' Co., this Court finds that the plaintiff's closing statements were neither improper nor did they mislead the jury.  As a preliminary matter, the Court acknowledges that the purpose of the 21 checks was a pivotal issue in this trial, for had the jury concluded that such checks were royalty payments, the Court's declaratory judgment could very well have favored the defendants instead of the plaintiff.  Nevertheless, the argument raised in the plaintiff's closing argument was not improper but, instead, was an accurate summary of the plaintiff's case-in-chief.  From the beginning of the trial, the plaintiff's position has been that the Leet Lease expired by operation of law because the defendants ceased producing oil and gas in paying quantities and ceased operations on the Bonner property.  The plaintiff further argued that the 21 checks it received in 2005-2007 were not royalty checks pursuant to an expired lease, but instead were 12 ½% of the gross profits owed for gas or oil produced after the expiration of the lease.  This position was

12

first laid out in the plaintiff's opening statement and then supported with documentary evidence and the testimonies of Mr. Bonner and Robert Crissinger.  Further, as explained previously, the plaintiff had a strong case and sufficiently supported its case-in-chief as evidenced by the jury's responses to the interrogatories.

With respect to the Court's treatment of the plaintiff's argument, this Court recognized in trial that the characterization of checks received by Bonner after the commencement of this action was not stipulated to by the parties but rather an issue for the jury to decide:

> Mr. Keller.   Objection.  We stipulated he received checks, he cashed them.  The characterization of those checks is a question that depends on whether the lease is still in effect or not.
> The Court:   Yes it does.

(Docket No. 175, Tr. pp. 47-48).  Accordingly, the plaintiff's statements in closing arguments were an accurate summarization of the evidence it presented at trial and did not mislead nor improperly influence the jury.

Regarding the defendants' argument that the plaintiff's position as to the characterization of the 21 checks eviscerates the estoppel defense, the Court finds no merit to this line of reasoning.  Acceptance by a lessor of benefits of an oil or gas lease provides the basis for an estoppel defense.  Rayl, et al. v. East Ohio Gas, et al., 46 Ohio App.2d 175, 179 (Ohio App. 9 Dist. 1975).[7]  Had the defendant put forth sufficient

---

[7] Power Gas relies on the precedent set forth in *Rayl* in asserting their estoppel defense.  Because the facts in *Rayl* are distinguishable from those in the case before this Court, the opinion offers limited direction to this Court.

In *Rayl*, the plaintiffs' predecessors in title to land and defendant East Ohio Gas executed an oil and gas lease agreement in 1928 (hereinafter, "Rayl Lease").  See Rayl, et al. v. East Ohio Gas, et al., 46 Ohio App.2d 167 (Ohio App. 9 Dist. 1973) (hereinafter "*Rayl I*").  This agreement was similar to the Leet Lease, in that the lease was valid so long as the gas company was producing oil or gas in paying quantities or maintaining operations on the lessor's property.  *Id.* at 168.

13

evidence to persuade the jury that the plaintiff had accepted some benefit pursuant to the Leet Lease, royalty payments or otherwise, then this Court would have had a factual basis to rule that the plaintiff was estopped from pursuing its claims.  However, the jury concluded it could make no such finding by a preponderance of the evidence.  Thus,

---

Five wells were drilled by East Ohio Gas on the Rayl property between 1933 and 1971.  *Id.*  In 1948, the parties to the oil and gas lease agreement executed a supplemental gas storage agreement, granting East Ohio Gas the additional right of injecting, storing, and removing gas on the lessor's property.  *Id.*  From 1949 forward, all of the Rayl wells operated as storage units and all quarterly payments made by East Ohio Gas to Rayl were for storage rents pursuant to the supplemental agreement.

The *Ray*l plaintiffs commenced litigation in 1971, seeking a declaratory judgment that the 1928 lease terminated, a declaratory judgment that the storage agreement terminated in 1958, a cause of action for trespass and nuisance, and an injunction against East Ohio Gas from future activity on the plaintiffs/lessors' property.  *Id.* at 169.  Defendant East Ohio Gas asserted an estoppel defense on the basis that the plaintiffs had accepted rental payments pursuant to the gas storage agreement and quarterly royalty payments through 1972.  The state trial court found that the two agreements were valid because the first two wells drilled on the Rayl property had never been abandoned, and that the plaintiffs were estopped to deny their validity because they had accepted rental payments after the commencement of the litigation pursuant to the valid agreements.  *Id.*

In *Rayl I*, the state appellate court distinguished oil and gas production leases, like the Leet Lease, from storage contracts, such as the supplemental agreement signed by the *Rayl* parties.  The court explained that oil and gas leases are terminable by contingency or operation of the law, but that storage contracts create a tenancy at will, terminable by either party.  *Rayl I* concluded that the plaintiff terminated the storage contract when it refused rental payments in 1972, but remanded the case to the trial court for further fact finding as to the defendants' estoppel defense.  *Rayl I*, 46 Ohio App. 2d at 172-174.

The trial court subsequently held a hearing and found that the plaintiffs had accepted rental payments and free gas pursuant to the storage agreement after the commencement of the litigation and were therefore estopped from pursuing claims to terminate the agreement.  Rayl, et al. v. East Ohio Gas, et al., 46 Ohio App.2d 175, 176 (Ohio App. 9 Dist. 1975) (hereinafter "*Rayl II*").  The appellate court in *Rayl II* affirmed the ruling of the trial court: "[The plaintiffs] did act in a manner inconsistent with the attempted termination of the agreements.  Because plaintiffs accepted the benefits of their agreement during the pendency of this litigation, they are estopped from pursuing this action at this time."  *Id.* at 179 (citing 20 Ohio Jurisprudence 2d 522).

In July 1977, the Supreme Court issued an opinion in Myers, et al. v. The East Ohio Gas Company that bore relevance to the *Rayl* decisions.  As in *Rayl I* and *II*, Myers involved a dispute over a gas storage agreement.  See 51 Ohio St.2d 121, 122-123 (Ohio 1977).  The Ohio Supreme Court overruled *Rayl I*'s holding that storage contracts are tenancies at will terminable by either party and held that such leases are, instead, terminable only by the lessee if the lessee ceases to store gas or make rental payments.

In November 1977, the *Rayl* parties appeared before the 9th District Appellate Court of Ohio for a third time.  Consistent with the *Myers* decision, the appellate court reversed its earlier ruling and held that the *Ra*yl lease was valid because, under the conditions of the lease agreement, it could not have been terminated by the *Rayl* plaintiffs and because lessee East Ohio Gas had not acted in such a way that would otherwise terminate the agreement.  Rayl, et al. v. East Ohio Gas, et al., 1977 WL 199086 *2 (Ohio App. 9 Dist. 1977) (hereinafter "*Rayl III*").  Thus, East Ohio Gas' estoppel defense was inconsequential.

Although *Myers* overturned the holding in *Rayl I* regarding whether a gas storage contract could be terminated at the will of either party, *Rayl I's* explanation that oil and gas leases based on production in paying quantities as lease agreements are terminable by operation of law was not disturbed by the Ohio Supreme Court.  Thus, a key distinguishing factor between *Rayl* and the case before this Court is that the estoppel defense became irrelevant in the *Rayl* cases because the defendants never terminated the storage lease agreement, whereas the Leet Lease terminated *by operation of law* in September 2004 when Power ceased producing oil and gas in paying quantities and ceased operations on the Bonner property.

14

Power Gas' estoppel defense was not eviscerated by the plaintiff's case-in-chief, but instead the defendants merely failed to satisfy their burden of proof that the plaintiff accepted a benefit of the Leet Lease after it initiated litigation.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motion for judgment as a matter of law or, in the alternative, for a new trial is denied.

IT IS SO ORDERED.

/s/ Lesley Wells_____<br>UNITED STATES DISTRICT JUDGE

Date:  15 August 2008